## JOHN HANCOCK, Admr., &c., *v.* TITUS & Co.

1. WILL: CONSTRUCTION OF: CASE IN JUDGMENT.—A will contained these two clauses: "It is my will and request that all my property, both real and personal, be kept together for the purpose of raising my children; also that my wife Jane keep all the property together until they become of age, or marry, and in that case the one becoming of age or marrying to have an equal share, according to the valuation of my estate so left." "It is further my will that my wife retain all my property, both real and personal, for the purpose above named, until my children become of age or marry.

or during her widowhood; but, in case of her intermarriage with another person—It is then my will that the property so left be equally divided between her and the children:—*Held:*

1. That the children took a vested estate in the property immediately upon the death of testator. See *Lowe* v. *Barnett*, 38 Miss. R. 329.
2. That neither by the first nor second clause was the widow's distributive share taken away, and that she had a vested interest in such share whether she married or not.

2. TRUSTS AND TRUSTEES: TRUST PROPERTY NOT LIABLE TO TRUSTEE'S DEBT.—Property purchased by a trustee with the trust funds will not be liable to a judgment against him, merely because he took the title in his own name, if he always treated it as trust property.

3. EXECUTION: INTEREST OF DISTRIBUTEE IN PERSONALTY NOT SUBJECT TO SALE UNDER.—A judgment creditor of a distributee cannot levy his execution upon a portion of the undistributed personalty of the estate, merely because the interest of his debtor in the estate is of greater value than the property seized.

APPEAL from the Chancery Court of De Soto county. Hon. John W. Thompson, chancellor.

*H. W. Walter,* for appellant.

*White, Chalmers & Scales* and *T. J. & T. A. R. Wharton,* for appellees.

HANDY, J., delivered the opinion of the court:

The bill in this case states, in substance, that Thomas W. Hancock died in the year 1845, leaving a will, and a widow and several children, and the widow his executrix, and disposing of his estate by his will as will be presently stated; that the executrix disposed of two slaves belonging to the estate, and for them or with the proceeds of the sale obtained other slaves, the title to which was, through inadvertence of her agent who attended to it, taken in her individual name, though they were intended to be substituted for those disposed of by her and to belong to the estate, and were always so considered and treated by her; that she died in 1858 without having married again after the testator's death, having kept the estate together according to the will since the testator's death, and the same being at her death and still remaining undivided, though some of the children are of

age; that, after her death, the appellant became administrator with the will annexed of the testator, and is keeping the property together under the will; that G. B. Wright became administrator of the estate of the widow after her death, and took charge of the slaves obtained by her by means of the assets of the testator's estate as above stated, claiming them as her property; that Wright was appointed administrator at the instance and to subserve the purposes of Titus & Co., who had a judgment against the widow individually, and, through his aid, an execution has been levied upon said slaves claimed to be her property. The bill alleges that she took no estate under the will, as she did not marry after the testator's death; and prays for an injunction against the sale of the slaves levied on, and that the title thereto be decreed to be in the estate of the testator.

The answer of Titus & Co. denies any knowledge of the claim of the testator's estate upon the slaves obtained by the widow, or that they were acquired by exchange, and claim that, as the title was taken in her name, and they were in her possession, they have a right, as creditors, to subject them to the payment of this debt against her; and allege that she is entitled to an interest in the testator's estate to a greater amount than the value of the slaves levied on, and that the debt on which this judgment was founded was contracted for goods and money advanced to the widow for the use of the plantation and for the benefit of her children, the legatees. This answer is made a cross-bill, and an answer required as to the value of the testator's estate, and the value of the widow's share of it, and whether the debt was not contracted for the consideration stated.

No answer was made to the cross-bill, nor answer filed to the original bill by Wright, as administrator of the widow; and upon the motion of Titus & Co. the injunction was dissolved.

The first question presented in behalf of the plaintiff in error is, whether the widow took any vested interest in the estate under the will. And this depends upon the first and second clauses, which indeed constitute all the disposing parts of it. These clauses are in the following words: "It is my will and request that all my property, both real and personal, be kept together

for the purpose of raising my children; also that my wife Jane W. Hancock keep all my property together until they become of age, or marry, and in that case the one so becoming of age or marrying to have an equal share, according to valuation of my estate so left." "It is further my will that my wife retain all the property, both real and personal, for the purpose above named, until my children become of age or marry, or during her widowhood; but in case of her intermarriage with another person—It is then my will that the property so left be equally divided between her and my children." And concludes by constituting his wife and his brother his executors, and leaving his wife as guardian of his children.

According to well-settled rules of construction, the interests of the children, under this will, were vested legacies, taking effect in interest at the testator's death. *Lowe* v. *Barnett*, 38 Miss. R. 329, and cases there cited.

In the first clause, the testator refers to the *shares* of the children upon their coming of age or marrying, giving them "equal shares, according to valuation of my estate." If no other provision had been made in the will, it is very clear that this language would be held to mean, a child's share of the whole estate, taking into the estimate the portion to which the widow was entitled by law. This clause clearly does not negative the widow's right.

The next clause then proceeds to provide that his widow should "retain all the property, both real and personal, for the purposes above named, [that is, raising the children,] until my children become of age or marry, or during her widowhood." The reason of this is manifest—that there was no necessity for her "retaining the property," or "keeping it together," as expressed in the previous clause, after they become of age or married, but that such parties were then in a situation to need and receive their shares; and that if she married, she might become unfit to "retain the property," for the purpose of raising the children. And the words which immediately follow—"but in case of her intermarriage with another person"—are to be interpreted by this same reason of her unfitness, in that event, "to retain the property" for the purpose specified; and the intention is apparent that, in case of such intermarriage, she was not to

retain the property or keep it together. This idea, though imperfectly expressed, is manifest from the context.

Then follows the provision: "it is then my will that the property so left be equally divided between her and my children." It is contended that the word "then," here used, refers to the language which immediately precedes it—"in case of her intermarriage with another person;" and that the widow was to be entitled to her equal share of the estate only in case of her marrying again. This view is founded on a too literal construction of the language employed, which cannot be entertained if the language is reasonably susceptible of another construction. And we think it evident that it admits of a different construction.

The sentence in which he speaks of her "intermarrying with another person" appears to be incomplete, and is a part of the same sentence in which he provides that the widow shall retain the property until the children become of age or marry, or during her widowhood. Then follows the clause—that the property should "*then*" be equally divided; being a new sentence from that preceding it, containing these several provisions. In literal construction, therefore, the word "then" may be referred as well to the previous provisions as to the words immediately preceding it. Thus considered, its meaning is, that she should retain the property until the children became of age, or should marry, or until she married again; and then and in that case, or *in either case*, the property should be equally divided between her and the children.

The special object which the testator appears to have had in view, in this part of the clause, was to fix the time for which the widow was to *retain possession* and keep the property together, and when the legacies were to vest in possession; but not to define the quality or quantity of the estate. And it is plain that the title of the widow to her share, when an equal division of the property should take place, was not to depend upon her marrying again; but that it vested in interest at the testator's death.

To give the clause such a construction would be to suppose that the testator indulged the most unnatural and improbable wish that his widow should marry another husband, and that he offered a reward to induce her to do so—a view entirely irreconcilable with the desire plainly expressed that she should retain

John Hancock, Admr., &c., *v.* Titus & Co.

and keep together the property for the purpose of raising the children, which were then young, until their becoming of age or marrying, and during her widowhood. The construction is, therefore, both unreasonable and inconsistent with the plainly indicated wish of the testator.

The next question raised is, whether the slaves levied on, being purchased with the assets of the estate, are liable to the execution against the widow, because they were conveyed to her in her individual name.

The only ground upon which the slaves are said to be so liable are, that the title was taken in her name and that the slaves were in her possession. But it appears that, though they were in her possession, yet they were treated as the property of the estate; and it is not alleged or shown that they were held out to the world as her property, or were so considered by the plaintiffs in the judgment, or that they contracted with her on the faith of this property. On the contrary, the answer alleges that the debt was contracted for the benefit of the testator's estate. Under these circumstances, it is plain that these creditors have no equity which should prevail over that of the testator's estate; and that these slaves are not subject to the execution.

Nor was it competent to levy upon them on the ground of the widow being entitled to an interest in the estate to the value of them. The estate was undistributed, and she had no such title in severalty to these slaves as to render them subject to an execution against her.

It follows from these views that the court erred in dissolving the injunction, whereby the slaves were subject to be sold under the execution.

In these views of the case, the ground of equity set up in the cross-bill, that the debt of the plaintiffs in execution was contracted for goods and money supplied to the widow for the use of the estate, is not taken into consideration. That question will probably arise if that ground of relief in the cross-bill is prosecuted in the further progress of the case.

The decree dissolving the injunction is reversed, and the cause remanded for further proceedings, and the complainant required to answer the cross-bill within sixty days.